UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CHRISTOPHER PEMENTAL

Plaintiff,

v.

C.A. No. 1:18-cv-00101-JJM-LDA

US BANK NATIONAL ASSOCIATION AS
TRUSTEE FOR THE HOLDERS OF THE
BEAR STEARNS ASSET BACKED
SECURITIES I TRUST 2004-AC6, ASSET
BACKED CERTIFICATES,
SERIES 2004-AC6,
OCWEN LOAN SERVICING, LLC,

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Defendants U.S. Bank National Association, not individually but solely as trustee for the

holders of the Bear Stearns Asset Backed Securities I Trust 2004-AC6, Asset Backed Certificates,

Series 2004-AC6 ("U.S. Bank as Trustee")[1] and Ocwen Loan Servicing ("Ocwen") (collectively,

the "Defendants") move to dismiss the complaint ("*Complaint*") of Plaintiff Christopher Pemental

("Plaintiff") because the controversy has become moot.

Plaintiff filed this action to stay a foreclosure sale of his property (which is not his principal

residence) on the grounds that Defendants did not send him a notice of default in strict compliance

with paragraph 22 of the subject mortgage.  Defendants, however, have now removed all fees

related to the prior foreclosure and have sent Plaintiff a notice of default that strictly complies with

paragraph 22 of the mortgage.  Plaintiff failed to cure the default by the date specified in the notice.

---

[1] Incorrectly captioned as U.S. Bank National Association as Trustee for the Holders of the Bear
Stearns Asset Backed Securities I Trust 2004-AC6, Asset-Backed Certificates, Series 2004-AC6.

1

Because Plaintiff has received everything that he requested in his *Complaint*, the claims are now moot, and the *Complaint* should be dismissed for lack of subject matter jurisdiction.

## FACTS

### A.      The Note and Mortgage.

On September 10, 2004, Plaintiff executed a promissory note ("*Note*") in the original principal amount of $343,900.00 in favor of GreenPoint Mortgage Funding, Inc. (GreenPoint") to evidence a loan of even amount ("*Note*").  *See* Affidavit of Howard Handville, at ¶ 4, attached hereto as **Exhibit A**.  On the same date, as security for repayment of the *Note*, Mr. Pemental granted a mortgage lien ("*Mortgage*") on property located at 193 Sowams Road, Barrington, Rhode Island 02806 ("Property") to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for GreenPoint.  *Id.*  The *Mortgage* was recorded with the Land Evidence Records of the Town of Barrington, Rhode Island on September 13, 2004 at Book 869 and Page 242.  **Exhibit A** at ¶ 5.  A true and correct copy of the *Mortgage* is attached as **Exhibit A-1**.  *See* **Exhibit A** at ¶ 6.

Among other provisions, the *Mortgage* details the rights of both the Lender and Plaintiff in the event that the Plaintiff defaults on the *Mortgage*, as follows:

> 22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under section 18 unless Applicable Law provides otherwise).  The notice shall specify: a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to the borrower, by which the default may be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by his Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration…If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law.

2

>If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower…Lender shall publish the notice of sale, and the Property shall be sold.

**Exhibit A-1** at ¶ 22.

The *Mortgage* was assigned as follows:

(a) On November 4, 2008, MERS assigned the *Mortgage* to GreenPoint.  This assignment is attached as **Exhibit A-2**. *See* **Exhibit A** at ¶ 7.

(b) On January 10, 2012, GreenPoint assigned the *Mortgage* to U.S. Bank N.A., as Trustee for Certificateholders of Bear Stearns Asset-Backed Securities I Trust 2004-AC6, Asset-Backed CertificatesSeries 2004-AC6.  This assignment is attached as **Exhibit A-3**. *See* **Exhibit A** at ¶ 8.

(c) On September 11, 2014, U.S. Bank National Association, as Trustee for Certificateholders of the Bear Stearns Asset Backed Securities I Trust 2004-AC6, Asset Backed Certificates, Series 2004-AC6 assigned the *Mortgage* to defendant, U.S. Bank as Trustee.  This assignment is attached as **Exhibit A-4**. *See* **Exhibit A** at ¶ 9.

Thus, U.S. Bank National Association, not individually but solely as trustee for the holders of the Bear Stearns Asset Backed Securities I Trust 2004-AC6, Asset Backed Certificates, Series 2004-AC6 is the holder of the *Mortgage*.  **Exhibit A** at ¶10. PHH Mortgage Corporation ("PHH"), as successor to Ocwen, services the *Mortgage* on behalf of U.S. Bank as Trustee.  **Exhibit A** at ¶ 11.

**B.**   **Plaintiff's Bankruptcy Filing and Default of the *Mortgage*.**

On June 18, 2007, Plaintiff filed a Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the District of Rhode Island.  *See In re Pemental*, Case No. 07-bk-11093.  On September 21, 2007, the Bankruptcy Court entered a discharge order, eliminating Plaintiff's personal liability on the *Note* and *Mortgage*.  *See* discharge order attached as **Exhibit B**.

Plaintiff defaulted on the *Note* and *Mortgage* by failing to make the payment due July 1, 2008, and all subsequent payments.  **Exhibit A** at ¶ 12.  On April 22, 2014, Defendant sent a notice of default to Plaintiff (the "2014 Notice"), requiring him to pay $221,702.95 on or before May 29,

3

2014, to cure the default and avoid acceleration and sale.  **Exhibit A** at ¶ 13; **Exhibit A-5**.  Plaintiff did not cure the default.  **Exhibit A** at ¶ 14.  On July 26, 2016, Defendant sent another notice of default to Plaintiff (the "2016 Notice"), requiring him to pay $331,064.02 on or before September 1, 2016, to cure the default and avoid acceleration and sale.  **Exhibit A** at ¶ 15; **Exhibit A-6**.  Because Plaintiff failed to cure the default, Defendants, through counsel, mailed a notice of foreclosure sale ("Notice of Sale") on January 11, 2018, scheduling a foreclosure sale of the Property for March 5, 2018.  **Exhibit A** at ¶¶ 16 and 17; **Exhibit A-7**.

**C.**    **Allegations of the *Complaint*.**

Plaintiff filed this action against the Defendants on March 1, 2018, seeking injunctive relief against a foreclosure sale of the Property scheduled for March 5, 2018.  Plaintiff describes the Property as a "multi-unit property" in which Plaintiff has a studio that he uses for "personal use as his secondary address" – the Property ***is not*** Plaintiff's principal residence.  *Compl.* ¶ 1.  The *Complaint* attached a copy of the 2014 Notice[2] and alleged that it failed to meet the requirements outlined in Paragraph 22 of the *Mortgage*, namely by not stating a date by which the default could be cured, improperly describing the Plaintiff's rights, and improperly describing the acceleration process as a result of the default.  *Compl.* ¶¶ 14-18.   The *Complaint* stated that because of this, the Defendants' exercise of the statutory power of sale and subsequent foreclosure sale scheduled for March 5, 2018 were defective.  *Compl.* ¶¶ 10, 22.

The allegations and their corresponding Counts are as follows:

---

[2] While the *Complaint* alleges that Plaintiff "has never been sent a default notice from the owner of the note or any entity, which was mailed to the [P]roperty," it attaches the 2014 Notice.  *Compl.* ¶ 6; *see also Compl.* ¶ 32 ("Plaintiff was not sent a default letter").  It appears the *Complaint* intends to allege that the 2014 Notice is defective because it was not mailed to the Property, or was deficient in other ways, not that Defendants never sent Plaintiff a notice of default.

4

- **Count I** alleges that Defendants breached their contract with Plaintiff by failing to comply with the terms of the *Mortgage* because the 2014 Notice did not strictly comply with the requirements of the *Mortgage*. *Compl.* ¶¶ 31-32. Therefore, the *Complaint* alleges that Defendants were not contractually authorized to exercise the statutory power of sale and foreclose on the Property. *Compl.* ¶ 33.

- **Count II** alleges that because Defendants scheduled a foreclosure sale in violation of the terms of the *Mortgage*, they violated the covenant of good faith and fair dealing. *Compl.* ¶ 39.

- **Count III** requests injunctive relief, alleging that the Plaintiff would be irreparably harmed if the foreclosure sale that was scheduled for March 5, 2018 occurred. *Compl.* ¶ 45.

The *Complaint* alleges that Plaintiff incurred damages because he "hired an attorney to commence this case" and "the Plaintiff's mortgage loan account has been charged legal fees and costs for foreclosure expenses." *Compl.* ¶ 34. The *Complaint* further alleges that he sustained "aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety" as a result of receiving "mail advising him that his property will be sold at a public auction." *Compl.* ¶ 41(c).

**D.**   **Events Subsequent to the Filing of this Action.**

After Plaintiff filed this action on March 1, 2018, Defendants canceled the foreclosure sale scheduled for March 5, 2018, and did not reschedule a foreclosure sale for the Property. *See* **Exhibit A** at ¶ 18. Defendants have since waived all foreclosure costs and fees that were assessed to the *Mortgage* account. *See* **Exhibit A** at ¶ 19. Specifically, on June 8, 2018, Defendants waived the following charges:

81771529v.3

| | |
|---|---|
| Title Report Fee | $564.00 |
| Appraisal Expense | $10.50 |
| Property Valuation | $436.00 |
| FC Thru Complaint | $2,501.25 |
| Skip Trace/Search | $5.30 |
| Service of Process | $190.07 |
| Auction Advertising Costs | $432.65 |
| Publication | $1,440.94 |
| Sale Publication | $606.24 |
| Selling Officer/Sheriff Cancel Fee | $425.00 |
| Monitoring Senior Lien Cost | $25.00 |

*See* **Exhibit A** at ¶ 20.  Additionally, on April 23, 2019, Defendants waived $282.00 for a Title Report Fee, and on May 7, 2019, Defendants waived $2,177.72 for a Foreclosure Expense.  *See* **Exhibit A** at ¶ 21.  Thus, in total, Defendants waived **$9,096.67** in fees related to prior foreclosure activities.  *See* **Exhibit A** at ¶ 22.

Thereafter, Defendants, through their counsel, mailed Plaintiff a notice of default (the "2019 Notice") on December 20, 2019.  *See* **Exhibit A** at ¶ 23; **Exhibit A-8**.  The 2019 Notice was mailed to Plaintiff at the Property and to his attorney by first class and certified mail.  *See* **Exhibit A** at ¶ 24; **Exhibit A-8**.  The 2019 Notice requires the Plaintiff to pay the cure amount of $439,539.53 by the cure date, which was specified as January 20, 2020.  *See* **Exhibit A** at ¶ 25; **Exhibit A-8**.  The cure amount stated in the 2019 Notice is comprised entirely of past due payments of principal and interest, plus payments for insurance and taxes and an escrow shortage as required by the *Mortgage*.  *See* **Exhibit A** at ¶ 26; **Exhibit A-8**.  No other charges were included.

The 2019 Notice advises the Plaintiff that he has the right to bring a court action to assert the non-existence of default and any other defenses to foreclosure he may have and advises him that he has the right to reinstate the *Mortgage* at any time prior to five days before the foreclosure sale.  *See* **Exhibit A** at ¶ 27; **Exhibit A-8**.  Plaintiff did not cure the default by the cure date

6

specified in the 2019 Notice. *See* **Exhibit A** at ¶ 28.  As of the date of the filing of this *Motion*, the *Mortgage* remains in default.  *See* **Exhibit A** at ¶ 29.

As of November 14, 2018, Plaintiff owed $687,972.99 on the *Note* and *Mortgage* for principal, interest, and escrow advances.  *See* **Exhibit A** at ¶ 30.  The town of Barrington assesses the value of the Property at $257,000.00. *See* **Exhibit C**.

## STANDARD OF LAW

Questions of subject matter jurisdiction under *Fed. R. Civ. P.* 12(b)(1) may be raised at any time or even *sua sponte* by the court.  See *Fed. R. Civ. P.* 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"); *McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004).

In ruling on a motion to dismiss for lack of subject matter jurisdiction under *Fed. R. Civ. P.* 12(b)(1), the "court must construe the complaint liberally, treat all well-pleaded facts as true, and indulge all reasonable inferences in favor of the plaintiff." *Okpoko v. Heinauer*, 796 F. Supp. 2d 305, 313 (D.R.I. 2011) (citing *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996)). The plaintiff bears the burden of proving the existence of subject-matter jurisdiction and "may not rest merely on unsupported conclusions or interpretations of law.  Subjective characterizations or conclusory descriptions of a general scenario that could be dominated by unpleaded facts will not defeat a motion to dismiss.  *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (internal citation and quotations omitted).

"[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 58 (1st Cir. 2016) (internal citations omitted) (alterations in original).  "When a case becomes moot, dismissal becomes mandatory." *Martins v. Fed. Hous. Finance Agency*, 214 F.Supp.3d 163, 167-168 (D.R.I.

Oct. 12, 2016) (internal citation omitted) (challenge to nonjudicial foreclosure found moot where the nonjudicial foreclosure was rescinded and not rescheduled because the mortgagee stated an intention to pursue judicial foreclosure).  Because "[m]ootness is a jurisdictional defect," *Horizon Bank & Trust Co. v. Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004), "dismissal of the action is compulsory." *Redfern v. Napolitano*, 727 F.3d 77, 85 (1st Cir. 2013).

## ARGUMENT

### A.    The Plaintiff's Claims are Moot and Should be Dismissed.

This Court should dismiss the *Complaint* because the cancellation of the March 2018 foreclosure sale, the waiver of fees, and the issuance of the fully compliant 2019 Notice rendered the Plaintiff's claims moot.

This Court has repeatedly held that a claim to enjoin a foreclosure or to declare a prior foreclosure sale invalid becomes moot if that foreclosure sale is set aside.  *See Emile v. Wells Fargo Bank, N.A.*, No. CV 15-077-M-LDA, 2019 WL 2436399, at *2 (D.R.I. June 11, 2019) ("That foreclosure never happened so that claim is moot"); *Martins*, 214 F.Supp.3d at 168 ("Ms. Martins has won her battle by having the non-judicial foreclosure vacated"); *Nash v. GMAC Mortg., LLC*, No. CA 10-493 S, 2011 WL 2470645, at *13 (D.R.I. May 18, 2011), report and recommendation adopted, No. CA 10-493 S, 2011 WL 2469849 (D.R.I. June 20, 2011).  Here, it is undisputed that the March 2018 foreclosure sale never took place.  Thus, this action became moot as soon as it was cancelled.

Even if the *Complaint* were not rendered moot when the March 2018 foreclosure sale was cancelled, the sending of the 2019 Notice rendered Plaintiff's claims moot.  *See Martins*, 214 F.Supp.3d at 168-169 (plaintiff's challenge to foreclosure sale dismissed as moot after rescission of foreclosure even though Court simultaneously held that the plaintiff did not receive a notice of default that strictly complied with paragraph 22 of the mortgage); *see also Coley v. Accredited*

8

*Home Lenders, Inc.*, No. 4:10CV01870, 2011 WL 1193072 at *4 (E.D. Ark. March 29, 2011) ("[w]hether the Notice of Default was valid is moot because the nonjudicial foreclosure sale described in the notice was cancelled"); *Bangs v. Quality Loan Servs. Corp.*, No. 6:12-cv-1543-AA, 2013 WL 867525 at *2 (D. Or. Mar. 8, 2013) ("Because the non-judicial foreclosure plaintiffs seek to enjoin is no longer possible due to defendant's voluntary decision to rescind the notice of default and election to sell…the case has become moot").

When considering similar claims involving an allegedly defective notice of default, the Court in *Pemental v. Bank of New York Mellon*[3] recommended the dismissal of a complaint alleging that the defendants had improperly scheduled a foreclosure sale in violation of the mortgage after the plaintiff alleged to have failed to receive a proper acceleration notice or a notice of default.  CA No. 16-483S, 2017 WL 3279015 (D.R.I. May 10, 2017) (Sullivan, M.J.) (*see Pemental v. Bank of New York Mellon*, C.A. No. 16-483-S, 2017 WL 3278872 (D.R.I. Aug. 1, 2017), adopting Report & Recommendation).  The Honorable Magistrate Sullivan wrote, "[a]t bottom, Plaintiff's contract claims fail because he has not plausibly alleged how he has been damaged by claimed breaches all of which have been rendered moot."  *Id.* at *6.

Here, the Defendants not only cancelled the March 2018 foreclosure sale, they also voluntarily removed all foreclosure-related fees from Plaintiffs' account and sent the 2019 Notice, which strictly complies with paragraph 22 of the *Mortgage*.  Canceling the foreclosure sale was sufficient on its own to render this action moot; the removal of fees and sending the 2019 Notice makes the mootness of this action beyond dispute.

---

[3] Plaintiff was also the plaintiff in that matter.  It concerned another investment property that he owns, which also was not his primary residence.

Because the Plaintiff's claims are moot, the Court lacks subject matter jurisdiction over them.

**B.      Plaintiff's Insufficient Allegations of Damages (A Necessary Element of His Breach of Contract Claims) Do Not Create a Genuine Controversy.**

As stated above, the cancellation of the March 2018 foreclosure, the waiver of fees and costs, and the issuance of the 2019 Notice render this action moot.  Plaintiff also claims damages in the form of litigation costs, charges added to the *Mortgage*, and emotional distress.  *Compl*. at ¶¶ 34, 41 .  However, because those allegations are insufficiently pleaded, Plaintiff cannot rely upon them to avoid dismissal for mootness.

Even at the motion to dismiss stage, Plaintiff must sufficiently plead enough facts to demonstrate each and every element of his claims.  "An element of a breach of contract claim is proof of damages."  *Chrabaszcz v. Johnston Sch. Comm.*, 474 F.Supp.2d 298, 309 (D.R.I. 2007). "The starting point for the analysis is the foundational principle that a plaintiff must not only prove the existence and breach of a contract, but also must prove that the breach caused him damage. *Petrarca v. Fidelity and Casualty Ins. Co*., 884 A.2d 406, 410 (R.I. 2005)." *Dan-Harry*, 2018 WL 5044235 at *6.

Here, the *Complaint* alleges three ways Plaintiff was damaged (1) he incurred costs and fees associated with hiring an attorney to commence this action; (2) "the Plaintiff's mortgage loan account has been charged legal fees and costs for foreclosure expenses;" and (3) he sustained "aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety" as a result of receiving "mail advising him that his property will be sold at a public auction."  *Compl.* ¶¶ 34; 41(c).  None of these claimed damages are sufficient allegations of damages and none are directly caused by the Defendants' alleged breach of contract.

1.      *Litigations Costs and Attorneys' Fees Are Not Damages*.

Attorneys' fees are not recoverable as damages in a breach of contract action.  *See Pemental,* 2017 WL 3279015 at *6  (citing Rhode Island Supreme Court cases for the proposition that "under American Rule, each litigant must pay his or her own attorneys' fees").  This Court has dismissed complaints that alleged litigation costs or attorneys' fees to try to satisfy the requirement of actual damages.  *See Lebeau v. U.S. Bank, Nat'l Ass'n*, 2019 WL 1077285 at *4 (Mar. 7, 2019) (McConnell, J.) (dismissing RESPA[4] claim where plaintiff alleged he used electricity from his cell phone to speak with his attorney, and used gasoline to drive to his attorney's office as insufficient allegations of damages).  Likewise, in *Viera v. Bank of New York Mellon*, the Court rejected the argument that allegations of attorneys' fees and costs associated with bringing the claims satisfied the "injury-in-fact" requirement of standing.  2018 WL 4964545 at *6 (Oct. 12, 2018) (Smith, J.) ("As with his RIFDCPA[5] claim, these damages would be recoverable if the alleged TILA[6] violation had caused actual harm, they are not a substitute for the injury-in-fact required by [*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016)].")

In the present case, the *Complaint* alleges the Plaintiff incurred costs and fees by hiring an attorney to bring this action, similar to the cases described above.  Allegations of legal costs and fees, however creatively drafted, are not adequate damages to support a breach of contract action.

2.      *Defendants Waived The Fees and Costs From the Prior Canceled Foreclosure*.

Defendants concede that in some instances, the costs and fees of an invalid foreclosure could constitute actual damages.  However, where a borrower has no equity in the mortgaged property and cannot show the ability to cure the default, foreclosure costs have been found

---

[4] Referring to the Real Estate Settlement Procedures Act.
[5] Referring to the Rhode Island Fair Debt Collection Practices Act.
[6] Referring to the federal Truth in Lending Act.

insufficient to support the damages requirement of a breach of contract claim. *See Pemental*, 2017 WL 3279015 at *6 ("by its terms, the mortgagee is permitted to recover such fees"); *Dan-Harry v. PNC Bank, N.A.*, 2019 WL 1253481 at *2 (Mar. 18, 2019) (Smith, J.) (granting summary judgment because plaintiff who "had no equity in the property and lacked funds to make any mortgage payments that the time of his default" failed to allege a breach of contract claim for failure to fulfill the requirement in HUD regulations to make a reasonable effort to hold a face-to-face meeting with the borrower). In *Emile, Martins,* and *Nash*, this Court dismissed as moot claims that a foreclosure sale was invalid without considering whether the fees and costs of the prior foreclosure had been removed from the account.

Regardless of whether fees and costs of the prior attempted foreclosure constitute adequate allegations of damages, the Defendants here waived **$9,096.67** in fees related to the prior foreclosure. *See* **Exhibit A** at 22. Therefore, the *Complaint* is moot as to this element of damages.

3.     ***Plaintiff Is Not Entitled To Emotional Distress Damages Related To The Alleged Breach Of Contract.***

Generally, "Rhode Island law does not permit recovery for emotional distress due to breach of contract." *Frisina v. Women & Infants Hosp. of R.I.*, No. CIV. A. 95-4037, 2002 WL 1288784, at *10 (R.I. Super. May 30, 2002). While there are certain factual scenarios that permit recovery for emotional distress arising from a breach of contract claim, the *Complaint* in the instant matter fails to set forth any exception to the rule. *Id.*; *but see, e.g., Dan-Harry*, 2018 WL 1083581, at *9 (acknowledging general rule described in *Frisina*, but recommending denial of motion to dismiss claims of emotional damages based on breach of contract to allow reevaluation on a more developed factual record).[7]

---

[7] Here, Plaintiff did not bring any tort claims. Thus, the discussion in *Dan-Harry* concerning *Hawkins v. Scituate Oil Co*., 723 A.2d 771, 773 (R.I. 1999) (emotional distress permitted for loss of use of residence arising from negligent oil spill) does not apply.

Plaintiff's breach of contract claims are not within one of the "certain factual scenarios" that would permit recovery of emotional damages.  Plaintiff alleges that the Defendants breached the *Mortgage* by sending a notice of default that does not strictly comply with Paragraph 22 of the *Mortgage*.  *Compl*. ¶¶ 6-18, 31-34.  The requirement to send specific information in a notice of default is not the type of agreement

> where the feelings and sentiments of the complaining party are so involved and in wrought that they form a necessary and unavoidable ingredient in the matter of the contract, and are very properly held to be within the contemplation of both parties as an inducement and consideration of the contract, and so to be considered in the award of damages for the breach.

*See Buenzle v. Newport Amusement Ass'n*, 29 R.I. 23, 68 A. 721, 722–23 (1908) (suggesting emotional distress damages are only available for "contracts of marriage, or contracts relating to illness, death, and burial").  Indeed, it is hard to contemplate how exercising contractual-remedy of foreclosure would be distressing in any way after such a long period of default, particularly where this is not Plaintiff's primary residence.  *Compl.* at ¶ 1.

Moreover, Plaintiff has not explained the causal connection between the alleged breach of contract and the alleged emotional damages.  In *Lebeau*, this Court dismissed a claim under RESPA because the plaintiff failed to allege how the claimed damages were caused by the alleged failure to respond to a written request under that statute.  2019 WL 1077285 at *4.  The *Lebeau* plaintiff did not show that if the servicer "had properly responded to his inquiry, he would not have charged his cell phone or driven his car or even that his electricity and gasoline bills were more than they would have been if [the servicer] had responded in a way he considered appropriate." *Id.*  The Court concluded that the allegations did not "allege a sufficient causal connection between any [servicer's] response and any specific, recoverable damages."  *Id.*

13

This case is no different than *Lebeau*.  The *Complaint* alleges that Plaintiff suffered emotional distress, not because he received a notice of default that allegedly did not contain all information that Paragraph 22 of the *Mortgage* required, but rather by receiving the Notice of Sale regarding a sale that was ultimately canceled.  *Compl*. ¶ 41(c) ("He has incurred stress with mail advising him that his property will be sold at a public auction.").  Plaintiff received the Notice of Sale because he is in default under the terms of the *Note* and *Mortgage*.  Plaintiff has not made a payment on the *Mortgage* in over ***eleven*** years.  *See* **Exhibit A** at 12.  The Property is not even Plaintiff's principal residence.  *Compl*. ¶ 1.  Plaintiff obtained a discharge of his personal liability on the debt secured by the Mortgage in Bankruptcy Court.  *See* **Exhibit B**.  The *Complaint* does not allege that if Plaintiff had received a fully-compliant notice of default, he could have reinstated the mortgage, avoided the foreclosure sale, and not suffered the alleged emotional distress.

Therefore, all of the damages claimed in the *Complaint* have been rendered moot because Defendants cancelled the prior foreclosure sale, waived the costs and fees associated with the prior foreclosure, and issued the 2019 Notice that strictly complies with the *Mortgage*.

## CONCLUSION

Plaintiff has been in default since July 1, 2008.  As both the Supreme Court of Rhode Island and the First Circuit Court of Appeals have aptly stated, "the piper must be paid."  *Pimental v. Deutsche Bank Nat'l Trust Co*., 174 A.3d 740, 745-746 (R.I. 2017) (*quoting Summers v. Fin. Freedom Acquisition LLC*, 807 F.3d 351, 353 (1st Cir. 2015)).

Defendants fulfilled all contractual conditions to foreclosure.  This action is moot due to the cancellation of the foreclosure sale, the waiver of the fees and costs related to the prior foreclosure, and the issuance of the 2019 Notice.  This Court lacks subject matter jurisdiction because all of the Plaintiff's claims are moot.  Thus, Defendants respectfully request that Counts I, II, and III of the *Complaint* in this case be dismissed.

14

81771529v.3

Respectfully submitted,

U.S. BANK NATIONAL ASSOCIATION AS
TRUSTEE FOR THE HOLDERS OF
THE BEAR STEARNS ASSET BACKED
SECURITIES I TRUST 2004-AC6, ASSET-
BACKED CERTIFICATES, SERIES 2004-AC6,
AND OCWEN LOAN SERVICING, LLC

By their Attorneys,

*/s/ Krystle G. Tadesse, Esq.*
Joseph A. Farside, Jr. (#7559)
Krystle G. Tadesse (#7944)
Jeffrey C. Ankrom (#7663)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI 02903-2499
401.274.9200
401.276.6611 (fax)
joseph.farside@lockelord.com
krystle.tadesse @lockelord.com
jeffrey.ankrom@lockelord.com

Date: February 27, 2020

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 27th day of February 2020, this document,
filed through the ECF system, will be sent electronically to the registered participants as identified
on the Notice of Electronic Filing (NEF), and paper copies will be mailed to those indicated as
non-registered participants.

*/s/ Krystle G. Tadesse, Esq.*

15

81771529v.3